LYONS, Justice.
 

 Governor Bob Riley and four trustees appointed by Governor Riley to the Board of Trustees of Alabama A & M University — David Slyman, Jr., Leroy C. Richie, Edward E. May, and Rev. Clyde C. McNeil (hereinafter referred to collectively as “the appointees”) — appeal from a judgment entered against them in an action filed by Robert T. Hughes and David Mar-zette (hereinafter referred to collectively as “the taxpayers”). Governor Riley and the appointees argue that the taxpayers do not have standing to maintain the action and that, therefore, the trial court lacked subject-matter jurisdiction. Because we also conclude, but on a different basis from Governor Riley and the appointees, that the trial court did not have subject-matter jurisdiction over this action, we vacate the judgment, dismiss the action, and dismiss this appeal.
 

 I. Factual Background and Procedural History
 

 The trial court summarized the facts underlying this case in its judgment:
 

 “On February 8, 2008, while the legislature was in session, Governor Bob Riley appointed defendants David Slyman, Jr., Edward E. May and Willie Clyde McNeil[-
 
 [1]
 
 -] to full six (6) year terms as trustees, said terms expiring on January 31, 2014. It is unclear from the record what date Leroy C. Richie was initially appointed by Governor Riley but his exact appointment date was subsequent to that of Slyman, May and McNeil.
 

 “On May 7, 2008, the confirmations committee of the Alabama Senate rejected the appointments of Slyman, May, McNeil and Richie on a unanimous vote of 8-0, thus creating four (4) vacancies on the Alabama A
 
 &
 
 M Board of Trustees.
 

 “On June 9, 2008, during a recess of the Alabama legislature, Governor Riley reappointed Slyman, May and McNeil as
 
 *645
 
 trustees, ‘effective immediately’ with terms expiring January 31, 2014. On that same date — June 9, 2008 — Leroy C. Richie was reappointed by Governor Riley ‘effective immediately’ to a term expiring January 31, 2012.”
 

 Although the taxpayers’ complaint is entitled “Verified Quo Warranto Complaint and Emergency Request for Temporary Restraining Order,” the body of the complaint states:
 

 “1. This is an action under the Declaratory Judgment Act, and Section 16-49-20,
 
 Code of Alabama,
 
 1975 declaring that the actions of Governor Bob Riley in ‘reappointing’ ‘ad interim’ David Sly-man, Jr., Leroy C. Richie, Edward E. May and Rev. Clyde C. McNeil to the Board of Trustees of Alabama A & M University, on June 9, 2008, after said individuals had been unanimously rejected (8-0) by the Alabama Senate on May 7, 2008, during its last regular session, violates Section 16-49-20,
 
 Code of Alabama,
 
 Alabama law and a 17 year old Attorney General’s opinion which held that:
 

 “ ‘... To allow the continued nomination and renomination of an individual who has been affirmatively rejected by the Alabama Senate would defeat the clear intent of Section 16-50-20 (a similar provision for Alabama State University’s Board of Trustees)’
 

 “See [Attorney General’s] Opinion 91-00351 from Walter Turner to then Senator Charles Langford, dated August 14, 1991, which is attached hereto. If not repudiated by this honorable court, the Governor’s ‘reappointments’ would strip the Senate of its ‘veto’ power (its role of providing advice and consent) over the Governor’s appointments. ...”
 

 The taxpayers’ initial complaint did not contain any assertions concerning then-standing to bring the action. Shortly thereafter, the taxpayers amended their complaint, but the amended complaint still did not contain any assertions as to standing. Governor Riley and the appointees filed an answer and a motion to dismiss in which they raised the issue of the taxpayers’ standing to bring the action. The taxpayers then filed a second amended complaint, in which they addressed the standing issue as follows:
 

 “2. ... Plaintiffs, as taxpayers, allege that allowing the ‘reappointed’ defendants to vote on the university budget, expenditures, personnel, buildings, bond issues, etc., when they are not legally entitled to a vote on said board of trustees, leaves the plaintiffs liable as taxpayers to replenish the public treasury for the deficiency caused by the misapplication of public funds.
 

 4. Plaintiffs allege that, as taxpayers, they will be adversely affected if the 4 reappointed defendants are allowed to vote on budgets and university expenditures if they are not legally entitled to sit on said trustee board.”
 

 The trial court held a hearing in the case during which it heard argument from the lawyers for the parties. At the conclusion of that hearing, the lawyer for the taxpayers offered several exhibits into evidence, consisting of the letters of appointment of the appointees and a stipulation of the parties, stating, in pertinent part, that the taxpayers are alumni of Alabama A & M University and that Marzette is the financial secretary for the National Alabama A & M University Alumni Association. The trial court entered a final judgment on September 19, 2008, in which it concluded, without addressing the issue of the taxpayers’ standing, that Governor Riley’s “purported trustee reappointments are not effective until and unless confirmed by the
 
 *646
 
 Alabama Senate.” The Governor and the appointees appealed.
 

 II. Analysis
 

 Governor Riley and the appointees argue, as they have throughout this proceeding, that the taxpayers do not have standing to bring the underlying action. Lack of standing defeats subject-matter jurisdiction. “When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.”
 
 State v. Property at 2018 Rainbow Drive,
 
 740 So.2d 1025, 1028 (Ala.1999). We conclude that the trial court lacked subject-matter jurisdiction, but on a different basis than standing.
 

 Both parties describe this action as governed by the Declaratory Judgment Act. However, the exclusive remedy to determine whether a party is usurping a public office is a quo warranto action pursuant to § 6-6-591, Ala.Code 1975,
 
 [2]
 
 and not an action seeking a declaratory judgment. See
 
 Ex parte James,
 
 684 So.2d 1315, 1317 (Ala.1996). A declaratory judgment will be declined where such relief is contrary to public policy.
 
 State Farm Mut. Auto. Ins. Co. v. Cardwell,
 
 250 Ala. 682, 685, 36 So.2d 75, 77 (1948) (“Mr. Borchard in his work on Declaratory Judgments writes that the declaration will be refused where in the opinion of the court it is inexpedient and contrary to public policy .... ”). A declaratory-judgment action cannot be employed where quo warranto is the appropriate remedy because the declaratory judgment would violate public policy.
 

 “This remedy [quo warranto] ‘looks to the sovereign power of the state with respect to the use or abuse of franchises — which are special privileges — created by its authority, and which must, as a principle of fundamental public policy, remain subject to its sovereign action in so far as the interests of the public, or any part of the public, are affected by their usurpation or abuse.’
 

 “Our statute has extended the right to institute such proceeding to a person giving security for costs of the action. But, in such case, the action is still prerogative in character, brought in the name of the State, on the relation of such person, who becomes a joint party with the State. The giving of security for the costs of the action is the condition upon which the relator is permitted to sue in the name of the State. Without such security, he usurps the authority of the State.
 

 “But this is not the only method of invoking the authority of the State in the protection of franchises it has granted in the interest of the public.
 

 “ ‘The judge of the circuit court may direct such action to be brought when he believes that any of the acts specified in the preceding section can be proved, and it is necessary for the public good.’ Code, § 9933 [now § 6-6-591 (b) ].
 

 “Thus is committed to the judicial department the institution of such proceedings, the same authority said to have the inherent power and duty to suppress the unlawful practice of law for the public good. ...
 

 
 *647
 
 “As indicated, it is the policy of the law of Alabama that [quo warranto] proceedings should be had in the name of the State, and instituted in the manner designated by statute.
 

 “To sanction a private action inter partes with the same objective would operate a virtual repeal of the quo war-ranto statute.
 

 “The Declaratory Judgment Law was never intended to strike down the public policy involved.”
 

 Birmingham Bar Ass’n v. Phillips & Marsh,
 
 239 Ala. 650, 657-58, 196 So. 725, 732 (1940) (citations omitted).
 

 Where a controversy presented in a declaratory-judgment action is not justi-ciable, this Court may notice the defect
 
 ex mero
 
 mote
 

 “1 “[JJusticiability is jurisdictional,”
 
 Ex parte State ex rel. James,
 
 711 So.2d 952, 960 n. 2 (Ala.1998); hence, if necessary, “this Court is duty bound to notice
 
 ex mero motu
 
 the absence of subject matter jurisdiction.” ’
 
 Baldwin County [v. Bay Minette],
 
 854 So.2d [42,] 45 [ (Ala.2003) ] (quoting
 
 Stamps [v. Jefferson County Bd. of Educ.,
 
 642 So.2d [941,] 945 n. 2 [ (Ala.1994) ]). If we determine that a complaint fails to state a justiciable claim, we are obliged to conclude that the trial court lacked jurisdiction over that complaint; such a complaint therefore would not require the filing of a responsive pleading.”
 

 Bedsole v. Goodloe,
 
 912 So.2d 508, 518 (Ala.2005).
 

 In
 
 Ex parte Sierra Club,
 
 674 So.2d 54 (Ala.1995), the trial court set aside a consent judgment entered in a declaratory-judgment action that purported to determine the legality of appointments to the Alabama Environmental Management Commission. The trial court held that it lacked subject-matter jurisdiction to enter the consent order, stating:
 

 “ ‘The relief sought by Sierra was precisely the type of relief for which quo warranto lies, to test their title to the office of Commissioner and to oust them if they were found to be wrongfully holding that office. Sierra does not claim any interest in the office; therefore, an action for declaratory judgment was not the proper remedy.’ ”
 

 674 So.2d at 56 (quoting trial court’s order). This Court affirmed the trial court’s judgment, finding a lack of justiciability:
 

 “In
 
 Talton v. Dickinson,
 
 261 Ala. 11, 72 So.2d 723 (1954), the Court held that
 
 qualified electors could not use a declaratory judgment action to determine the eligibility of a nominee for public office. The private citizens failed to show by their complaint any justiciable rights in the premises to invoke the jurisdiction of the court for a declaratory judgment.’
 
 261 Ala. at 12, 72 So.2d at 724. The Court cited
 
 Dietz v. Zimmer,
 
 231 Ky. 546, 21 S.W.2d 999 (1929), in support of its position; in
 
 Dietz,
 
 the Kentucky Court of Appeals noted that the appellants in that case sought ‘merely a declaration of disqualification of the named defendants,’ and it held:
 
 ‘In the absence of a justiciable controversy requiring a declaration of the rights of the plaintiffs,
 
 ...
 
 the court has no jurisdiction to enter a binding judgment’
 
 (As quoted in
 
 Talton,
 
 261 Ala. at 14, 72 So.2d at 726.) The
 
 Talton
 
 Court held that ‘a proceeding in quo warranto, Title 7, § 1133 et seq., [Ala.Code of 1940,] is the exclusive remedy to determine whether or not a party is usurping a public office.’ 261 Ala. at 14, 72 So.2d at 726. See also
 
 Akers v. State ex rel. Witcher,
 
 283 Ala. 248, 250, 215 So.2d 578 (1968) (‘Quo warranto is the proper procedure
 
 *648
 
 to test whether or not a party is eligible to hold public office.’).
 

 “In
 
 Reid v. City of Birmingham,
 
 274 Ala. 629, 150 So.2d 735 (1963), the Court held that residents of the City of Birmingham who challenged an election to change the City of Birmingham’s form of government
 
 had no ‘interest such as will make this action present a justicia-ble controversy’ for purposes of a declaratory judgment action.
 
 274 Ala. at 639, 150 So.2d at 744. It cited
 
 Taitón
 
 in holding: ‘[Q]uo warranto, not declaratory judgment, is the exclusive remedy to determine whether or not a party is usurping a public
 
 office.’
 
 274 Ala. at 638, 150 So.2d at 743.”
 

 674 So.2d at 57 (emphasis added).
 

 The failure of Governor Riley and the appointees to assert the unavailability of a declaratory-judgment action as a substitute for a quo warranto action does not constitute a waiver of the jurisdiction issue and therefore does not preclude this Court from noticing a jurisdictional defect — -lack of justiciability. We are “ ‘duty bound to notice
 
 ex m,ero motu
 
 the absence of subject-matter jurisdiction.’ ”
 
 Baldwin County v. Bay Minette,
 
 854 So.2d 42, 45 (Ala.2003) (quoting
 
 Stamps v. Jefferson County Bd. of Educ.,
 
 642 So.2d 941, 945 n. 2 (Ala.1994)). We therefore are not confined to the arguments of the parties in our subject-matter-jurisdiction analysis because subject-matter jurisdiction cannot be waived by the failure to argue it as an issue.
 

 “ ‘On questions of subject-matter jurisdiction, this Court is not limited by the parties’ arguments or by the legal conclusions of the trial and intermediate appellate courts regarding the existence of jurisdiction. Rather, we are obligated to dismiss an appeal if, for any reason, jurisdiction does not exist. See
 
 Ex parte Smith,
 
 438 So.2d 766, 768 (Ala.1983) (“Lack of subject-matter jurisdiction may not be waived by the parties and it is the duty of an appellate court to consider lack of subject-matter jurisdiction ex mero motu.” (citing
 
 City of Huntsville v. Miller,
 
 271 Ala. 687, 688, 127 So.2d 606, 608 (1958))).’
 

 “Ex parte Alabama Dep’t of Human Res.,
 
 999 So.2d 891, 894-95 (Ala.2008).”
 

 Championcomm.net of Tuscaloosa, Inc. v. Morton,
 
 12 So.3d 1197, 1199 (Ala.2009).
 

 We have not overlooked the title to the original complaint filed by the taxpayers, which described the action as a “quo warranto complaint.” However, the body of the complaint alleges that the action is brought under the Declaratory Judgment Act. Even if we were to rely on the description in the title of the complaint as controlling over the description of the action in the body of the complaint and thus view this action as governed by the statutory remedy of quo warranto set forth in § 6-6-591, no security for costs accompanied the complaint. The absence of such security is a jurisdictional defect. See
 
 Cook v. Lloyd Noland Found., Inc.,
 
 825 So.2d 83, 88 (Ala.2001) (“ ‘The giving of security for the costs of the litigation “is a condition on which the right to proceed in the name of the State is given to individuals.” ... Otherwise stated, it “is a condition
 
 precedent to the jurisdiction of the court.” ’
 
 ” (quoting
 
 Brannan v. Smith,
 
 784 So.2d 293, 297 (Ala.2000), quoting in turn
 
 State ex rel. Radcliff v. Lauten,
 
 256 Ala. 559, 561, 56 So.2d 106, 106-07 (1952))).
 

 Our resolution of this case on the foregoing basis pretermits our consideration of the challenge by Governor Riley and the appointees to subject-matter jurisdiction based on lack of standing. Because of the unavailability of a remedy by declaratory judgment and the absence of security for costs if the action is treated as one for quo
 
 *649
 
 warranto, the trial court did not have subject-matter jurisdiction.
 

 Any action taken by a trial court without subject-matter jurisdiction is void.
 
 Property at 2018 Rainbow Drive,
 
 740 So.2d at 1029. Furthermore, “a void order or judgment will not support an appeal.”
 
 Gallagher Bassett Servs., Inc. v. Phillips,
 
 991 So.2d 697, 701 (Ala.2008). Because the trial court lacked subject-matter jurisdiction, its judgment is void and will not support this appeal.
 

 III. Conclusion
 

 For the foregoing reasons, the judgment in favor of the taxpayers is vacated and their action is dismissed. Further, because a void judgment will not support an appeal, this appeal is dismissed.
 

 JUDGMENT VACATED; ACTION DISMISSED; AND APPEAL DISMISSED.
 

 COBB, C.J., and WOODALL, STUART, SMITH, PARKER, and SHAW, JJ., concur.
 

 BOLIN and MURDOCK, JJ., concur in the result.
 

 [1]
 

 . Apparently this is the appointee we refer to as "Clyde C. McNeil.”
 

 [2]
 

 . Section 6-6-591 states, in pertinent part:
 

 "(a) An action may
 
 be commenced in the name of the state against the party offending in the following cases:
 

 "(1) When any person usurps, intrudes into or unlawfully holds or exercises any public office, civil or military, any franchise, any profession requiring a license, certificate, or other legal authorization within this state or any office in a corporation created by the authority of this state ...